1

RUDY ROSENBERG
418 E 88TH ST, 2G
NY NY 10128

2

3

RECEIVED
SDNY PRO SE OFFICE

2020 MAR 10  PM 1:41

4

# UNITED STATES DISTRICT COURT

5

## _____ SOUTHERN DISTRICT OF _____

6

### NEW YORK

7

8



9

RUDY ROSENBERG

Case No:

10

11

**NOTICE OF REMOVAL OF PROCEEDING**

12

vs.

**UNDER Diversity; Fair Housing Amendments
Act of 1988; Diversity; 42 U.S.C. §§ 3601-3619;
42 U.S.C. §§2000a, 2000a-6 (1964); 42 U.S.C. §§
3601-3619; 28 U.S.C. 28 U.S.C. § 1443, 1455,
and 1446; 42 USC 1983 et seq.**

13

SHEMIRAN CO. LLC

14

15

&

16

ANTHONY CANNATARO, Administrative Judge;

**(FEDERAL QUESTION)**

17

18

ANNE KATZ, Supervising Housing Court Referee,

19

HEELA CAPELL, Referee, ALIA RAZZAQ, Chief

**JURY DEMAND**

20

Clerk;

21

EUGENE HURLEY, First Deputy Chief Clerk et al

TRO / ORDER TO SHOW CAUSE

22

23

24

25

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

26

PLEASE TAKE NOTICE that PETITIONER, Rudy Rosenberg hereby removes to this Court the state

27

court action described below.

28

1

# INTRODUCTION

## EMERGENT IRREPARABLE ISSUES

1.  Petitioner challenges the constitutionality of the complained about procedures used and actions engaged by the respondents that are calculated by the respondents to cause Petitioner irreparable economic, constitutional and other harms.

2.  Judge McMahon has refuses to address the issue of the state court Civil Rights violations on the above issue or hold the state court in contempt for violating 28 U.S. Code § 1446(d).

3.  Petitioner repeats all facts, arguments and allegation in his prior Notice of Removal [see Case No. 20-CV-229], inclusive of the 28 USC 1443, ADA and FHA violations.

4.  On or about February 27, 2020, Petitioner received the Housing Court trial notice setting the trial date on March 17th at 9:30 am, **EXHIBIT: A**

5.  Housing Referee Capell's November 21, 2019 orders held that Petitioner's hearings and trial are to be set for after 2pm, **EXHIBIT: B**

6.  Petitioner filed a motion to compel the Housing Court to comply with the State Court's standing administrative order that all of Petitioner's hearings/trials are to be after 2 pm, **EXHIBIT: C**

7.  Additionally, the State and landlord actors continue to conspire and violate 28 U.S. CODE 1446(d) during the period of the removal to SDNY District Court from January 14th forward.

8.  The State Court had engaged with the landlord's counsel, on or about February 13th voluntarily to set the trial date on March 17th in the morning.

2

9.  The landlord's counsel voluntarily and deliberately motivated the Housing Court to violate a standing court order prohibiting such judicial conduct setting hearings prior to 2 pm on any given date.

10. The Housing Court record demonstrates that the landlord's counsel has been persistently conspiring with the State judiciary and Clerks Office since March 2019 to unlawfully set the Housing Court proceedings against Petitioner in the mornings, even though all concerned are fully aware of the standing judicial ADA accommodation order prohibiting Petitioner's hearing taking place before 2 pm.

11. It is also axiomatic that a Notice of Removal is an application for injunctive relief against the State Court's Civil Rights, inclusive of Equal Civil Rights, abuses and fraud upon the Court akin to the relief received in Sinisgallo v. Town of Islip Hous. Auth. 865 F. Supp. 2d 307 (E.D.N.Y. 2012), Carr v. Axelrod, 798 F. Supp. 168 - Dist. Court, SD New York 1992 and in Assisted Living Associates of Moorestown, L.L.C. v. Moorestown Township. 31 F. Supp.2d 389 (D. N.J. 1998).

12. The facts of this proceeding also satisfy both test prongs of 28 USC 1443 as the established federal record to date argues that the State Court's is engaged in racial discrimination calculated to unlawfully deprive the tenants of their Equal Civil Rights and that the tenants' conduct is legally immune from prosecution by the landlord and the State Court.

13. The Housing Court continues to prosecute the proceedings in Petitioner's absence, in violation of     from January 15th forward setting a trial date ex-parte with the Landlord for March 17, 2020 at 9:30 am even though the Court is fully aware that it has a standing ADA accommodation order that all of Petitioner's State court hearings are to take place after 2 pm.

3

14.    On or about November 20, 2019, the State and private respondents engaged in the unlawful alteration of the Housing Court's audio recording of the November 21, 2019 hearing to fix the eviction proceeding in favor of the landlord and which irreparably harms Petitioner's substantive rights.

15.    The Housing Court has set a trial date, with calculated reckless indifference to violating Petitioner's ADA right mandating afternoon hearings, during the pendency of a previous removal in mid-January 2020 to mid-February 2020.

16.    The current conspiracy of an ex-parte setting a morning trial date is strictly with the intent of unlawfully engaging in an ex-parte trial to obtain a default judgment against Petitioner.

17.    The State actors, with the intent to fix the Housing Court proceedings against Petitioner, have been engaged in a conspiracy with the Landlord and his proxies since at least March 2019 that involves Equal Civil Rights, ADA, Rent Stabilization and residential leasing frauds.

18.    By specific reference, Petitioner has previously filed a Motion to Dismiss et seq. with the State Court in the early afternoon of January 14, 2020.

19.    Petitioner previously filed a notice of removal on January 8, 2020 and filed the required notice papers with the State Housing Court Clerk's Office on January 14th in the late afternoon.

20.    The Housing Court's private agreement with the landlord also incorporates the court's deliberate refusal to adjudicate Petitioner's motion filed on January 14, 2020.

21.    Respondents have further colluded to violate the Housing Stability and Tenant Protection Act of 2019 by scheduling hearing dates absent subject matter jurisdiction of both HSTP

4

2019 and violate 28 U.S. Code § 1446(d), in addition to 15 USC 1692, Rule 60 of the Federal Rules of Civil Procedure.

22.     Furthermore, the prior Notice of Removal voided the Housing Court's actions taken from January 14th through at least February 13th because Referee Timmie Elsner stated on that date that there was no record of the remand having taken place on or before that date.

23.     Since the adoption of § 1446, it has been uniformly held that the state court loses all jurisdiction to proceed immediately upon the filing of the petition in the federal court and a copy in the state court.

24.     The Court in Hsin–Chi–Su v. Vantage. Drilling Company. No. 14-14-00461-CV, 2015 WL 4249265 held that if the plaintiff and the court continue to litigate in State Court during the removal, absent the removing defendant's knowledge, these actors can perpetrate a Fraud upon the Court to create a record for remand portraying the defendant as waiving federal jurisdiction,

> in Keirtec, the defendant removed the case to federal court. 478 F. Supp. 2d at 1340. However, the defendant then "stood silent" while other parties filed pleadings in the state court and that court issued orders. Id. At 1340–41. The federal court held that it must remand because the defendant had impliedly consented to jurisdiction in state court.

25.     Both the Housing Court and the landlord's acts of collusion to proceed, during the removal, at the trial level are contemptuous,

> Courts can maintain orderly procedure only if they hold void any state court proceedings after the filing of the removal petition and prior to a federal remand order, regardless of a subsequent determination that the removal petition was ineffective. South Carolina v. Moore, 447 F.2d 1067, 1073 (4th Cir. 1971).

26.     The state court cannot proceed any further and any orders or judgments issued by a state court after removal and before remand are void ab initio.

... [T]he State court shall proceed no further unless and until the case is remanded."

See 28 U.S.C. § 1446(d); see also Ackerman v. ExxonMobil Corp. (4th Cir. 2013)

734 F3d 237, 249–250 (any post removal action by state court is void ab initio).

# INTRODUCTION

27.   Petitioner does not possess the full record as required by 28 U.S.C. § 1455 (a) due to the

fact that such records are in the exclusive possession and control of Respondents and

Judicial actors and he State actors have been deliberately obstructing access since March

2019.

28.   Federal courts, mandated with protecting constitutional rights, regularly rule that the New

York Housing Court administration, an unconstitutional court, is fair and well suited to

adjudicate tenant rights, but the housing courts are ill-suited and were never designed to

embrace formal judicial proceedings.

29.   If a landlord engages in "Sewer Service"; the tenant has absolutely no right of discovery

against the records only known and possessed by the landlord which is a blatant

constitutional violation.

30.   The New York City Housing Court executive management is involved with the

billionaire landlord in a "Sheldon Silver" financed "Pay-to-Play conspiracy against

Petitioner and his co-residents that, by analogy, mirrors the abuses raised in Escalera v.

New York City Hous. Auth., 425 F.2d 853 (2d Cir. 1970).

31.    In 2015 FBI investigated 60 Center Street and did a sweep of most of New York State's judicial brass over case and appeal fixing based upon payments to judges and influence peddling in the courts.

32.    The fact that the New York City Housing Court is an unconstitutional court is settled law as they are appointed NYC employees and not judicially vetted like real judges,

>     The Civil Court.... includes the Housing Part, which disposes of hundreds of thousands of matters annually yet isn't even a constitutional court. -Chief Judge Judith Kaye, See Testimony of Chief Judge Judith S. Kaye before Joint Legislative Hearing on Court Restructuring (Oct. 7, 1997)

33.    Historically, tenants sought to appeal Housing Court decisions to the federal courts. See Johnson v. Birnbaum, No. 98 Civ 2326 (MBM), 1998 WL 156713 (S.D.N.Y. April 3, 1998), the District Court for the Southern District of New York, held that housing court decisions are not appealable, because its court lacks subject matter jurisdiction pursuant to the Rooker-Feldman doctrine.

34.    The Birnbaum Court held that, Plaintiff in Birnbaum sought to vacate a judgement of dispossession issued by a housing court judge in the City of New York.'" Plaintiff claimed that he was barred from entering a single witness in his behalf, including one on telephone standby.  Despite the fact that the plaintiff was clearly denied due process rights in housing court proceedings, the court dismissed plaintiff's appeal anyway.

35.    In Escalera v. New York City Hous. Auth., 425 F.2d 853 (2d Cir. 1970), The court found that the Housing Authority's procedures were inadequate because they failed to provide procedural protections including, among other things, ( 1) adequate notice of the grounds for termination before the pre-termination hearing and (2) opportunities to examine the tenant's owner file and to confront or cross-examine the witnesses upon whose testimony the allegations of non-desirability or rulemaking breaking were based.

36.    The Escalera Court's findings are representative of the judicial abuses occurring in the instant Housing Court action directed at Petitioner. The Escalera Court's findings further established that when the cases are then presented on appeal, important constitutional, statutory, and regulatory issues remained unidentified during the housing court proceedings. Because tenants have neither identified nor raised these issues before the agency, their legal claims are thereby precluded from judicial consideration and this procedural abuse is present in the instant Housing Court proceedings.

## PLAUSIBLE FEDERAL QUESTIONS

37.    Whether New York RPAPL 711 et seq is unconstitutional as to the enforcement and prosecution of a landlord's lease, at the election of the landlord, respecting jury waiver and landlord access lease conditions.

38.    Whether there exists a preemptive conflict between the New York State RPAPL's enforcement of a landlord's lease that facially violates tenants' rights under Subchapter B of Chapter VIII of Subtitle S of Title 9 NYCRR § 2524.3, the ADA and the FHA.

39.    Whether New York RPAPL 735 et seq is unconstitutional as applied to enforcing the lease, at the election of the landlord, terms and conditions inclusive of process service by regular and certified mails that are in violation of the notice terms set out in the landlord's lease.

40.    Whether Housing Court Referee Heela Capell, the NYC Housing Court Clerk's Office and the New York City Housing Court operate unconstitutionally in dealing with Petitioner.

# JURISDICTIONAL ISSUES

## PERSONAL JURISDICTION – STATE COURT

41.     Judge McMahon has clearly missed the mark by not understanding basics of New York State RPAPL in that the State law is a statutory construction and there is no notion of "constructive" service, apparently by publication, in Housing Court matters.

42.     It is fundamental to this application for this Court to appreciate that the current state prosecution is entirely outside of the state court's jurisdiction, inclusive of both personal and subject matter jurisdictions.

43.     Judge McMahon's "knitting in" federal patchwork work excuses, i.e. "constructive service", such as McMahon inventing a new form of delivery of process service, under the RPAPL, is a frivolous abuse of federal court time and resources.

44.     If Judge McMahon is employing "constructive service" within the context of RPAPL can only be found on the Housing Court website for the sixth judicial district in New York State, therefore "constructive service" is not a term used by New York City courts, See http://ww2.nycourts.gov/courts/6jd/citysummproceed.shtml

45.     Conversely, Petitioner and his co-tenant have not been served process in the underlying Housing Court proceeding and now make a "Snap Removal" pursuant to the Court's holding in Gibbons v. Bristol-Myers Squibb Co., 17-2638, et al. (March 26, 2019).

46.     The Gibbons holding now permits any defendant in the Second Circuit to remove a state court case to federal court even when the case involves a defendant sued in the defendant's home state -- as long as the defendant removes the case before any defendant is served. The Third Circuit reached the same result last year. Encompass Ins. Co. v. Stone Mansion Rest. Inc., 902 F.3d 147 (3d Cir. 2018).

9

47.   The previous Notice of Removal was remanded based upon illogical reasons given by Judge McMahon such as, "Rosenberg and his co-tenant were constructively served with the petition under Index Number L&T, 67375/19, on or about September 10, 2019. (ECF 2 at 66-67.)."

48.   In fact, the previous removal petition did not even mention notice by public publication, therefore McMahon's holding that the federal application of "constructive publication" to a State Housing Court matter is frivolous and illogical. See T.H. McElvain Oil & Gas Ltd. P'ship v. Benson-Montin-Greer Drilling Corp. 2016

49.   Furthermore, Petitioner repeats, under Twombly, that the record is void of service and Petitioner has certified that actual notice was not sent nor was it received so these statements do not require anything more than average IQ to comprehend.

50.   Judge McMahon has a propensity to violate Petitioner's rights under governing law, Court Rules and statutes such as "when considering a motion to dismiss a pro se complaint, the Court must interpret the complaint liberally to raise the strongest claims that the allegations suggest." See Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000); see also Hughes v. Rowe, 449 U.S. 5, 9 (1980) (per curiam) (noting that courts should hold pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks omitted)).

51.   The U.S. Postal Service conducted an investigation into the landlord's Affidavit of Service, dated September 10th, relating to serious irregularities related to the averred mailings of the Holdover Petition pursuant to the following Certified Mail Receipts.

52.   The USPS emailed the following investigation report that supports Petitioner's complaint of Mail Fraud by the landlord upon the Court and the state defendants,

**From:** Branham, Gail M - New York, NY <Gail.M.Branham@usps.gov>
**Sent:** Friday, January 3, 2020 12:58 PM
**To:** Del Pizzo, Marcellina R - New York, NY <Marcellina.R.DelPizzo@usps.gov>; Chio, Elsa - New York, NY <Elsa.M.Chio@usps.gov>
**Cc:** Branham, Gail M - New York, NY <Gail.M.Branham@usps.gov>
**Subject:** RE: [EXTERNAL] RE: MID DECEMBER 2019 MISSING MAIL COMPLAINT
**Importance:** High

Dear Mr. Rosenberg:

This is in response to your inquiry regarding non-delivery of Certified Mail sent to Eltha Jordan, Rudolph Rosenberg, Jane Doe and John Doe of 418 East 88th Street, Apt. 2G. Your concerns were shared with Mr. Anthony Carlo, Manager of Customer Services at the Gracie Post Office. Mr. Carlo and his staff were asked to investigate.

Our investigation revealed, Certified Mail pieces with Tracking Numbers – 70181130000019052163, 70181130000019052170, 70181130000019052187, and 70181130000019052194 were entered into the Postal Service's mail stream under unverifiable circumstances. The Certified Mail Receipts you provided, are not filled out and therefore, we cannot be sure of their origin. Additionally, the tracking shows that the mail pieces were arrived at Gracie Post Office for delivery, and there was a delivery attempt on Sept. 12, 2019. A thorough investigation was conducted, and in lieu of the time that has passed and failure to locate the missing mail we are unable to confirm delivery, and must conclude the mail pieces are irretrievably lost.

We would like to offer our sincere apology for the inconvenience incurred. We are constantly striving to improve service to our customers, and feedback such as yours, assists us in identifying areas needing our attention. Certainly, the service you reported is not typical of the service we normally provide, and we agree you have every right to expect better.

The Postal Service is aware of the frustration and disappointment we cause when we do not live up to our commitment of safe and reliable mail service. There can be no acceptable excuse for poor service.

Once again, please accept our apology for any inconvenience you have experienced. If further assistance is needed, please contact your local NY Customer Relations Office at (212) 330-3084.

*Gail M. Branham*

Customer Relations Coordinator, NY

380 West 33rd Street, Room 4022

212-330-3084

53.     The landlord's mail fraud, that implicates federal court jurisdiction, is calculated to discriminatorily deprive Petitioner and his co-defendant of their State and Federal Constitutional rights inclusive of Equal Constitutional Rights.

54.     The Iowa Supreme Court in War Eagle Vill. Apts. v. Plummer - 775 N.W.2d 714 (Iowa 2009) held that the use of generic certified mail is unconstitutional because there is not a requirement to satisfy a "to door" delivery and had postal employees regularly "cut corners" that undermines the certified mail delivery process, "The postal employee also

11

testified that she has 'overheard mail carriers say that they have to cut the times on their routes,' and to do that 'they could just drop the 3849 in the mailbox and go.   They wouldn't have to attempt the delivery [to the door] which would take time.'"

55.   The War Eagle Court further held, "We cannot read into the statute a signed-receipt requirement that is contrary to the plain language of the statute….."

56.   The War Eagle Court ruled, "This scheme gives the illusion, but not the reality, of due process. There are two major factors that support our conclusion.   "First, the FED statutory scheme deems notice complete upon mailing.   Under Iowa Code section 562A.8, service is deemed received when mailed.   Dropping a letter in a mailbox is not notice yet is deemed sufficient notice.   It is mere lip service to meaningful notice."

57.   Generic Certified Mail, like regular mail, lacks the audit trail that is attached to Registered Mail

58.   The Court in Greene v. Lindsey, 456 U.S. 444 (1982) held, In failing to afford appellees adequate notice of the proceedings against them before issuing final orders of eviction, the State deprived them of property without due process of law required by the Fourteenth Amendment. Pp. 456 U. S. 449-456,

> (a) "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U. S. 306,3 339 U. S. 14. Pp. 456 U. S. 449-450.
>
> (b) In light of the fact that appellees were deprived of a significant interest in property and, indeed, of the right to continued residence in their homes, it does not suffice to recite that, because the action was in rem, it was only necessary to serve notice "upon the thing itself." The sufficiency of

the notice must be tested with reference to its ability to inform people of the pendency of

proceedings that affect their interests. Pp. 456 U. S. 450-451.

(c) Notices posted on the doors of tenants' apartments were "not infrequently" removed before they

could be seen by the tenants.

59. The Greene Court further held that the evicted tenants had no opportunity for recourse

through the state court system. "Thus without recourse in the state courts, appellees filed

this suit as a class action in the United States District Court for the Western District of

Kentucky, seeking declaratory and injunctive relief under 42 U.S.C. § 1983 and that even

process servers complain that posted notices are vandalized,

a time when posting provided a surer means of giving notice than did mailing, [t]hat time has

passed. The uncontradicted testimony by process servers themselves that posted summonses are not

infrequently removed by persons other than those served constitutes effective confirmation of the

conclusion that notice by posting 'is not reasonably calculated to reach those who could easily be

informed by other means at hand,'

60. "The Greene court looked to the magnitude of the interest involved, that is, the right of

continued residence in the home, in reaching its determination that the posted notice was

inadequate. (Id., at p. 451 [72 L.Ed.2d at p. 256].)" See the *Greene* court looked to the

magnitude of the interest involved, that is, the right of continued residence in the home,

in reaching its determination that the posted notice was inadequate. (Id., at p. 451 [72

L.Ed.2d at p. 256].)

## SUBJECT MATTER JURISDICITON – STATE COURT

61. In speaking to the state court's subject matter jurisdiction, the state court is proceeding in

violation of the New York State First Department's decision in BDO USA, LLP v.

Phoenix Four, 113 A.D.3d 507 (First Dept., 2014) that renders the petition under state

court Index LT-67375-19/NY as a legal nullity or otherwise legal fiction.

62.    The fact that the state court refuses to acknowledge LT-67375-19/NY as a legal nullity does not permit this Court to pretend or act otherwise, therefore this Court cannot remand this application to the state court, as the landlord's current State court complaint and proceeding is a legal nullity at the state level.

63.    Furthermore, since the instant New York state complaint is a legal nullity, pursuant to CPLR 3217(a)(1) et seq., the doctrine of prior exclusive jurisdiction does not apply primarily because the state court's discontinuance of the March 2019 holdover proceeding resulted in the court's not retaining jurisdiction over the property.

64.    The landlord originally filed holdover petition, Index 056244-19, in March 2019, but the landlord engaged in "Sewer Service" and certified the process service upon the tenants.

65.    The landlord next filed a Notice of Discontinuance September 6th and simultaneously filed a new holdover petition, Index LT-67375-19/NY, but the service as to the discontinuance and the second petition were by "Sewer Service" and the landlord, once again, falsely certified the process service upon the tenants.

66.    The Notice of Discontinuance was filed without leave of the trial court as required by CPLR 3217(a)(1) since the notice was filed outside of 20 days from the March 2019 petition filing and over two months after Petitioner had filed pre-answer motions to dismiss in June and July 2019, respectively.

67.    On both November 21, 2019 and again on January 15, 2020, Housing Referee Capell unlawfully dismissed, denied notice/opportunity to be heard and present evidence, all of Petitioners' pre-trial motion to dismissed and forced him into a trial.

68. The state court's discontinuance in favor of the second complaint, which is a legal nullity pursuant to First Department governing law, effectively terminates the state court's subject matter jurisdiction.

69. The doctrine of prior exclusive jurisdiction applies to a federal court's jurisdiction over property only if a state court has previously exercised jurisdiction over that same property and retains that jurisdiction in a separate, concurrent proceeding. See, e.g., Chapman, 651 F.3d at 1042; One 1985 Cadillac Seville, 866 F.2d at 1144–45.6, See Sexton v. NDEX WEST, LLC, 713 F. 3d 533 - 2013 - Court of Appeals, 9th

70. The Sexton Court also held, "the same rule would apply to a state court if a federal court were the first to assert jurisdiction over the property. See United States v. Alpine Land & Reservoir Co., 174 F.3d 1007, 1012–14 (9th Cir. 1999)."

# FEDERAL JURISDICTION

71. Both Petitioner and co-defendant Eltha Jordan, defendant tenants, have not been served in the underlying state proceedings.

72. By statute, the federal court may hear and decide a claim in a removed civil action even where the state court had no jurisdiction because the action is exclusively federal. [28 U.S.C. §1441(e)] Formerly, the federal court was required to dismiss.

73. By private lease agreement, being an express agreement, between the tenants and the landlord executed in Fall 2018, Petitioner and his co-tenants have the absolute right to remove any state action federal court that is also permitted by the lease forum selection clause.

74. Additionally, the state proceeding is not brought upon the authority of the actual landlord, petition not signed by landlord nor attached affidavit of authority. But is brought by an unknown law firm that has not demonstrated that it is authorized by the landlord.

75. This incorporated venue agreement is enforceable and relates to any action or proceeding brought by the landlord or his agents where tenants seek to raise federal counterclaims and defenses relating to FHA and any other complaint of discrimination against the landlord or anyone associated with the landlord engaged in violations of the tenants' constitutional rights.

76. The key provision of the principal federal removal statute, 28 U.S.C. § 1441(a), authorizes a defendant to remove from state court to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction ....," and 28 U.S.C. 1443 (1)

77. 42 U.S.C. §§2000a, 2000a-6 (1964), Article III of the U.S. Constitution, 28 U.S.C. § 1443(1), 42 U.S.C. § 1985 et seq., Title III, 42 U.S.C. § 2000b et seq, 28 U.S.C. § 1331 and 1343 for claims arising under the Americans with Disabilities Act (the "ADA")

78. All-Writs Act (AWA), 28 U.S.C. § 1651(a), which provides that the federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

79. Petitioner and his state court co-defendant have not been served process and any of the state court's orders in both proceedings.

80. Federal district courts have original jurisdiction over civil actions in diversity cases "where the matter in controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of different States." 28 U.S.C. § 1332.

16

81.    Federal Court also have original jurisdiction relating to Takings Clause of the Fifth
       Amendment.

82.    Additionally, Section 1331, general removal jurisdiction, applies and must be founded
       upon diversity.

83.    The District Court's subject-matter jurisdiction is, in part, based upon the diversity of
       citizenship between the parties, as provided in 28 U.S.C. §1332(a)(1).

84.    The value and the amount in controversy of the litigation exceeds the jurisdictional limit
       of $75,000.00.

85.    Petitioner attaches a record of permission from Eltha Jordan as only a cautionary step to
       this Court siding with the state court as to whether defendants have been joined.

# LEGAL ARGUMENT

86.    The Court "must accept all facts in the complaint as true and 'view them in the light most
       favorable to the' plaintiff." Moore v. Liberty Nat. Life Ins. Co., 267 F.3d 1209, 1213
       (11th Cir. 2001) (quoting Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th
       Cir. 1998)); see also Gen. Guar. Ins. Co. v. Parkerson, 369 F.2d 821, 825 (11th Cir. 1966)
       ("We are, of course, aware of the obligation to scrutinize the complaint and to let it stand
       if plaintiff might recover under any state of facts which could be proved in support of the
       claim, with the complaint construed in the plaintiff's favor.").

87.    Respecting the Equal Civil Rights claim, in applying the Rachel test, all facts stated in the
       Notice of Removal are presumed to be true. Rachel 384 U.S. at 805; Bar Assn of
       Baltimore City v. Posner, 391 F. Supp. 76, 79 (D.C. Md. 1975).

88.     The facts and law raised herein will demonstrate that the landlord's petition, forming the basis of the eviction proceeding, is also an exception, "an exception to the well-pleaded complaint rule, removal may be permitted in those comparatively rare cases where the plaintiff's state-law claim is completely preempted by federal law." Beneficial National Bank v. Anderson, 539 U.S. 1, 9 (2003); see also Aetna Health Care Incorporated v. Davila, 542 U.S. 200 (2004) (ERISA preempts state law tort claims against ERISA-regulated health providers; defendants may therefore remove state claims).

89.     The underlying holdover petition is an exception to the "well pleaded" doctrine in that it seeks rents outside of the declared landlord-tenant relationship as part of a discriminatory eviction conspiracy.

# COMPLETE DIVERSITY

## STATE CITIZENSHIP - LANDLORD

90.     SHEMIRAN CO. LLC is a citizen of California by way of its' owner, Kambiz Hakim.

91.     A limited liability company ("LLC") is a hybrid legal structure that provides the limited liability features of a standard corporation and the tax efficiencies and operational flexibility of a sole proprietorship or partnership. Its members can include one or more individuals, corporations, partnerships or LLCs.

92.     The citizenship of an LLC is determined by the citizenship of each of its members. See, e.g., Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC, 692 F.3d 42, 49 (2d Cir. 2012).

93.     A complaint premised upon diversity of citizenship must allege the citizenship of natural persons who are members of a limited liability company and the place of incorporation and principal place of business of any corporate entities who are members of the limited

liability company." New Millennium Capital Partners, III, LLC v. Juniper Grp. Inc., 2010 WL 1257325, at *1 (S.D.N.Y. Mar. 26, 2010) (citation omitted). The state of incorporation for the LLC itself is, therefore, irrelevant.

94. Shemiran Co., LLC, is an LLC entity registered in New York State, with the sole member, Kambiz Hakim, resides in San Diego California and has stated that his state citizenship is declared publicly as being Californianian.

95. Furthermore, Kambiz Hakim also has his holding company, Hakim Holdings LLC, registered at 9350 Wilshire Blvd, #300, Beverly Hills, CA 90212, where he operates out of on a daily basis per his New York City staff.

## STATE CITIZENSHIP - TENANTS

96. The McMahon Court typically employs negligent legal analysis that includes holding that a person's physical residence equates to citizenship in a diversity jurisdiction assessment.

97. Even if this Court deems Petitioner a citizen of the forum court, both Petitioner and his co-tenant are permitted to remove under the "Snap Removal" doctrine.

98. Given That District Court May Not Sua Sponte Remand for a Procedural Defect, Is Removal by a Forum Defendant Procedural or Jurisdictional? — Circuit Split — Domicile, Not Residence, Determines Citizenship for Diversity Purposes. See Martin v. Phillips, 2017 U.S. Dist. LEXIS 37792 (M.D. Fla. Mar. 16, 2017) that raises the issue of a Circuit Split; Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP, 365 F.3d 1244, 1245 (11th Cir. 2004) (per curiam) ("[T]he district court may not sua sponte decide to remand the case for any procedural defect other than lack of subject matter jurisdiction.").

99.    The Martin Court further expounded upon the Circuit Split, "Neither the Supreme Court

nor the Eleventh Circuit Court of Appeals has directly addressed the question of whether

removal of a diversity action by a defendant who is a citizen of the forum state is a

waivable procedural defect or a jurisdictional defect. See Lincoln Prop. Co., 546 U.S. at

90 n.6 ("Although we have not addressed the issue, several lower courts have held that

the presence of a diverse but in-state defendant in a removed action is a 'procedural'

defect, not a 'jurisdictional' bar, and that the defect is waived if not timely raised by the

plaintiff.") (citing 14C C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure

§ 3739, pp. 451-57 & nn. 32-37 (3d ed. 1998)); see also Snapper Inc. v. Redan, 171 F.3d

1249, 1257-58 (11th Cir. 1999) (recognizing circuit split as to whether removal by

forum-state defendant is procedural or jurisdictional defect and suggesting in dicta that

the better interpretation is that the defect is procedural); Bregman v. Alderman, 955 F.2d

660, 663 (11th Cir, 1992) (per curiam) (commenting in dicta that removal by defendant

who was citizen of forum state was a procedural, rather than jurisdictional, defect);

Murphy v. Aventis Pasteur, Inc., 270 F. Supp. 2d 1368, 1374, 1375 n.8 (N.D. Ga. 2003)

(recognizing that "[t]he question of whether the forum defendant rule is jurisdictional is

an unsettled one" and adopting the "majority view" that "the forum defendant rule of §

1441(b)" is a waivable procedural defect); but see Elias v. Am. Nat'l Red Cross, 271 F.

Supp. 2d 1370, 1373 (N.D. Ala. 2003) (acknowledging divergent authority and

concluding that the forum defendant rule was "intended as an actual subtraction from the

subject-matter jurisdiction that would otherwise be afforded by 28 U.S.C. § 1332, and did

not simply create a potential, waivable procedural defect")."

100.   Petitioner and his co-defendant are domiciled in New Jersey for many years prior to

taking possession of the subject apartment.

101.   A natural person's citizenship is determined by his or her "domicile," or "the place of his true, fixed, and permanent home and principal establishment . . . to which he has the intention of returning whenever he is absent therefrom." McCormick v. Aderholt, 293 F.3d 1254, 1257-58 (11th Cir. 2002) (quotation and citation omitted).

102.   Accordingly, "the assertion in the Notice as to Miller's residence is insufficient to establish her citizenship for diversity purposes." See Taylor, 30 F.3d at 1367 ("Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person."); see also Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989) ("'Domicile' is not necessarily synonymous with 'residence[.]'").

103.   Removal is permissible where the diversity threshold is satisfied pursuant to 28 USC 1441(b) as none of the tenants is a citizen of the State in which such action is brought.

104.   Every person has a domicile, and more importantly, a person is presumed to be domiciled in his or her domiciliary state until a new domicile is acquired. See Lyon v. Glaser, 60 N.J. 259, 277 (1972), but this presumption is easily overcome by Petitioner's factual statements herein.

105.   In Dart Cherokee Basin Operating Company v. Owens, 135 S. Ct. 547, 554 (2014), the Supreme Court held that a notice of removal need only plausibly state a basis for federal jurisdiction. It need not include evidence that jurisdictional requirements, such as the amount in controversy, are met.

106.   This Court must consider both the New Jersey and the New York State rules governing residency to properly assess whether Petitioner and Ms. Jordan can be considered domiciled in New York.

21

107.   Petitioner and Ms. Jordan were residing in New Jersey immediately prior to taking possession of the subject NYC apartment in summer of 2018 and continue to maintain material financial, legal and personal contacts with New Jersey with the intent of returning.

108.   This Court has no record demonstrating that the tenants have changed their domicile to New York.

109.   Both Petitioner and Eltha Jordan maintain most of their personal property located at a New Jersey address, have a legal claim to reside at a New Jersey address, maintain physicians & dentists, maintain local New Jersey fax and telephone numbers tied to New Jersey in addition to banking and related operations in New Jersey.

110.   Petitioner also conducts ongoing resident related government services transactions through New Jersey government, including New Jersey Driver's License records, NJ Unemployment Insurance payments, in addition to being employed in New Jersey during 2018 and 2019, Petitioner and Ms. Jordan maintain an ongoing address for mail and personal affairs in addition to considering New Jersey to be their domicile.

111.   Domicile is a matter of intent, requiring physical presence or contact with New Jersey and an intention to remain in New Jersey or return to New Jersey after leaving it. See In re Gillmore's Estate, 101 N.J. Super. at 87.

112.   A taxpayer cannot establish a new domicile unless he or she proves intent to abandon his or her original domicile. See Citizens State Bank and Trust Co. v Glaser, 70 N.J. 72, 81 (1976); Lyon, 60 N.J. at 264.

113.   the New Jersey Tax Court (in Samuelsson v. Director, No. 003615-2004, 2005 N.J. Tax LEXIS 9 (N.J. Tax Ct. May 10, 2005) agreed with the taxpayers and found that they had

abandoned their New Jersey domicile during the time Kjell was employed with the

Tampa Bay Lighting in Florida. The court considered a number of factors in reaching its

conclusion:

1.      the taxpayers moved all of their furniture and belongings to Florida;

2.      the taxpayers said good-bye to their friends in New Jersey;

3.      the taxpayers closed their New Jersey bank accounts and opened accounts in Florida; and

4.      Kjell obtained a Florida driver's license and registered his car in Florida.

114.    Where there is evidence of more than one residence, or the residence is not clear, the

court looks to the party's intent. See Chen v. Sun, No. 113CV00280, 2016 WL 270869,

at *2 (S.D.N.Y. Jan. 21, 2016).

115.    Domicile is defined by residence in fact along with the intent to remain there or to return

when absent. See, e.g., Kaufman & Broad, Inc. v. Gootrad, 397 F. Supp. 1054, 1055

(S.D.N.Y. 1975).

116.    "No single factor is determinative, and courts must consider the 'totality of the

evidence.'" Id. (quoting Nat'l Artists Mgmt. Co. v. Weaving, 769 F. Supp. 1224, 1228

(S.D.N.Y. 1991)).

117.    No minimum time period is required to establish domicile, and "although intent to remain

in the state is a key element of demonstrating a change of domicile, the person need not

have the affirmative intent to remain there permanently." Hidalgo v. City of New York,

No. 14-cv-2282, 2015 WL 1729811, at *2 (S.D.N.Y. Apr. 14, 2015)

118.    An individual's residence at the time a lawsuit is commenced only provides prima facie

evidence of his domicile. See District of Columbia v. Murphy, 314 U.S. 441, 455, 62 S.

Ct. 303, 309, 86 L. Ed. 329 (1941); Krasnov v. Dinan, 465 F.2d 1298, 1300 (3d

Cir.1972); Broadstone Realty Corp. v. Evans, 213 F. Supp. 261, 265"Domicile is not synonymous with residence; a party can reside in one place and be domiciled in another." Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009) (citing Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 47-49, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989)), aff'd, 406 F. App'x 507 (2d Cir. 2010). (S.D. N.Y.1962).

119.   Domicile is defined by residence in fact along with the intent to remain there or to return when absent. See, e.g., Kaufman & Broad, Inc. v. Gootrad, 397 F. Supp. 1054, 1055 (S.D.N.Y. 1975); Broadstone Realty Corp. v. Evans, 213 F. Supp. 261, 265 (S.D.N.Y.1962) (domicile in one state continues until a new domicile is shown to have been established).

## VALUE IN CONTROVERSY

**120.   The eviction proceeding has an undeclared agenda which amounts to unlawfully retain the security deposit, with interest, in addition to unlawfully deregulating the apartment to increase rents and building valuation.**

121.   The Second Circuit follows the plaintiff's viewpoint rule. Kheel v. Port of N.Y. Auth., 457 F.2d 46, 49 (2d Cir. 1972) (jurisdiction lacking) (citation and internal quotation omitted) ("Generally, for this reason, the amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested.").

122.   The Court in Doris W. Ray Irrevocable Trust et al v. Ray 6:2017cv00763 held, "When the petitioner's desired injunctive relief is eviction, courts determine the amount in

controversy based on the potential change in the petitioner's economic position. See MCC
Mortg. LP v. Office Depot, Inc., 685 F.Supp.2d 939, 943-44 (D. Minn. 2010)."

123.   The Doris Ray Court also held, "In assessing this value, courts look to the length of time
remaining in the lease and the difference in value between the rent received from the
current tenant and the potential rent from a future tenant. A. Levet Prop. P'ship. v. Bank
One, N.A., No. 03 Civ. 1373, 2003 WL 21715010, *3 (E.D. La. July 21, 2003)."

124.   The instant Housing Court proceeding includes a contest as to the legal status of the
apartment being Rent Stabilized which Petitioner asserts is Rent Stabilized.

125.   Therefore, the stabilized apartment value is perpetual as long as the tenants wish to
remain and continue in good standing and this fact serves as the economic basis for the
landlord to seek eviction so as to unlawfully deregulate the subject apartment.

126.   Ultimately, one or maybe two years more of the Rent Stabilized lease qualifies the
controversy as being over the threshold $75,000, including the current landlord's
complaint.

127.   Pursuant to 28 U.S.C. § 1446 (c )( (3)(A)   If the case stated by the initial pleading is not
removable solely because the amount in controversy does not exceed the amount
specified in section 1332(a) , information relating to the amount in controversy in the
record of the State proceeding, or in responses to discovery, shall be treated as an 'other
paper' under subsection (b)(3).

128.   The landlord's current complaint is not a true representation of the amount in controversy
as the two petitions filed on the same apartment have contradictory statements as to the
regulated status of the unit being Rent Stabilized as opposed to the second petition
verifying that it is not Rent Stabilized.

**129.** At the time of the May 2018 lease, the landlord engaged in a confidence scheme, realizing that Petitioner was under pressure to make a decision, to induce a situation duress in Petitioner by orally guaranteeing the apartment under beneficial terms and conditions then extracting the $4,100.00 security deposit and first month's rent and after obtaining these funds the landlord deliberately delayed producing the lease.

130. As of June 2019, the landlord is also refusing to return the excess of one month's security deposit as required by the NYS HSTPA that amounts to interest on $4,100.00 since May 2018 plus the excess rent of $2,050.00 which amounts to a grand larceny violation of New York Penal Law 190.80(2).

131. The Housing Stability and Tenant Protection Act (HSTPA) of 2019 prohibits landlords from retaining security deposits in excess of one month's rent, but the instant landlord has not only refused to account for the original two-month deposit from June 2018.

132. Furthermore, the landlord seeks to unlawfully deregulate the subject Rent Stabilized apartment and such unlawful deregulation will automatically increase the rents and the value of the apartment in conjunction with the addition increase in the building's valuation.  See Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961) (citation and internal quotation omitted) ("The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed in good faith.").

133. In the instant State proceeding, the value to the landlord is primarily unlawfully deregulating the Rent Stabilized apartment, avoiding expensive tenant litigation and associated impending liability that conservatively exceeds $300,000.00 through this eviction proceeding.

134. The complaint now states that the amount in controversy exceeds $35,000.00, but information relating to the amount in controversy in the record of the State proceeding, such as the original March 2019 petition, certified the apartment as Rent Stabilized, therefore the original petition should be treated as an 'other paper' under subsection (b)(3).

135. Furthermore, the landlord now claims rents owed over $35,000.00.

136. The landlord's counsel has stated that they are seeking legal fees in excess of $50,000.00 which combined with the rents sought thereby more than satisfies the monetary jurisdictional requirement,

> [a] potential award of attorneys 'fees may be considered by the court when determining whether a case involves the jurisdictional minimum." Gardiner Stone HunterInt'l v. Iberia Lineas Aereas De Espana, S.A., 896 F. Supp. 125, 128 (S.D.N.Y.1995) "[I]t is settled that such [reasonable attorneys'] fees may not properly be included in determining the jurisdictional amount unless they are recoverable as a matter of right." Givens v. W. T. Grant Co., 457 F.2d 612, 614 (2d Cir. 1972) (citing Wright, Federal Courts § 35, at 119 (1970); Moore's Federal Practice ¶ 0.99 [2] (2d ed. 1964)). "In the absence of a contract or statutory authority, neither of which is to be found here, plaintiffs cannot recover attorneys' fees . . . ." Givens, 457 F.2d at 614

137. Additionally, the landlord's act of self-help unlawful deregulation of the apartment, is intertwined with the racially motivated eviction, and is calculated to immediately deprive the tenants of the rights under the Rent Stabilized law with the benefit of simultaneous increased rents and building valuation post-deregulation.

138. The market value of the apartment building is approximately six million dollars that translates into an estimated $200,000.00 value for each apartment and the apartment rent would increase significantly after the eviction calculated to be at least $100,000 increase in market value on the building.

27

139. The court in South Park Associates, LLC v. Renzulli, 94 F. Supp. 2d 460 (S.D.N.Y. 2000) held, "A plaintiff need not seek monetary damages in order to meet the jurisdictional requirement. The value of property free from rent regulation can constitute the amount in controversy. See Eisen v. Eastman, 421 F.2d 560, 566-67 (2d Cir. 1969) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 181, 56 S. Ct. 780, 80 L. Ed. 1135 (1936) and Kroger Grocery & Baking Co. v. Lutz, 299 U.S. 300, 301, 57 S. Ct. 215, 81 L. Ed. 251 (1936))."

140. The South Park Court further addressed the fact that the petitioner's allegation that the deregulated apartments can be put into the controversy to meet the diversity monetary threshold,

> The Second Circuit wrote that "the complaint can be considered to put into controversy the value of the two buildings free from rent control as against being bound by it, or at least their value before and after the rent reduction order." 421 F.2d at 566. By alleging that the value of the apartments at issue free from rent control would exceed $75,000, South Park satisfies the jurisdictional amount requirement.

**John Doe requests immediate relief as described herein and any other permitted relief by this Court through District Court intervention.**

Rudy Rosenberg certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically, so identified, are reasonably based on belief or a lack of information.

_____

Rudy Rosenberg

418 E 88TH ST., 2G
NY 10128
917-740-9757

Eltha Jordan hereby states that I have not been served process in both state proceedings but to avoid jurisdictional issues in the federal court, I provide my permission for Rudy Rosenberg's Notice of Removal.

_____ March, 10, 2020

Eltha Jordan

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: HOUSING PART G
------------------------------------------------------------X

SHEMIRAN CO. LLC,

                Petitioner/Landlord,

            -against-

RUDOLPH ROSENBERG; ELTHA JORDAN,

              Respondent/Tenants

------------------------------------------------------------X

Index No. 67375/19

Motion Seq. No. 001

**DECISION/ORDER**

Present:  Hon. Heela D. Capell
          Judge, Housing Court

Recitation, as required by CPLR § 2219(a), of the papers considered in the review of the respondent's pre-answer order to show cause to dismiss the proceeding.

**Papers**

| | Numbered |
|---|---|
| Notice of Motion & Affidavits Annexed............................... | 1 |
| Notice of Cross-Motion and Affidavits Annexed.................... | |
| Answering Affidavits............................................................... | |
| Replying Affidavits................................................................ | 2 |
| Exhibits.................................................................................. | 3 |
| Stipulations............................................................................ | |
| Memorandum of law............................................................. | |

Upon the foregoing cited papers, the Decision/Order on respondent's order to show cause is as follows:

      This holdover proceeding first appeared on the calendar in Part F on September 26, 2019.

The proceeding was adjourned to October 17, 2019 and transferred to this Part on that date.

Respondent, Rudolph Rosenberg ("Respondent") filed an order to show cause application on that

date, which the court signed on the record, in front of both parties.  The court accelerated the

*Exhibit: B*



Civil Court of the City of New York
111 Centre Street
New York, NY 10013

Phone: (646) 386-5730    Fax: (212) 374-8053
WEB Site: www.nycourts.gov/Housing
Hours: 8:30a-5:00p M,T,W,F - 8:30a-7:00p Th

Hon. Anthony Cannataro                                    Alia Razzaq
Administrative Judge                                      Chief Clerk

------------------------------------------------------------------

## NOTICE

February 10, 2020

Rudolph Rosenberg
418 East 88th Street, Apartment 2G
New York, NY 10128

Shemiran Co. LLC
          -against-
Rudolph Rosenberg... et al.

**Index No:** LT-067375-19/NY                    **Calendar No:**

**PLEASE TAKE NOTICE**  that your Landlord and Tenant case has been adjourned to
March 17, 2020 at 9:30 AM in Part Part N, Room 823 for a Bench Trial .

You must appear and bring this notice with you.

                                        Alia Razzaq
                                        Chief Clerk

CC:    Eltha Jordan

Exhibit. A

The branch of the order to show cause seeking a transcript fee waiver is denied as it is not supported by facts showing that Respondent is entitled to a fee waiver.

The branch of Respondent's order to show cause seeking that this court take judicial notice of an undisclosed agreement between the parties permitting Respondent to interpose two simultaneous CPLR 3211 motions is denied as Respondent has not provided the court with a copy of any such agreement and Petitioner disputes that such an agreement exists.

The remaining arguments made by Respondent in reply will not be considered by the court as they were raised for the first time in the reply papers. (*All State Flooring Distribs., L.P. v MD Floors, LLC*, 131 AD3d 834 [1st Dept 2015]; *USAA Fed. Sav. Bank v Calvin*, 145 AD3d 704 [2d Dept 2016]).

Accordingly, the order to show cause is denied in its entirety.  The Proceeding is adjourned for trial to January 15, 2020 at 2:30PM to accommodate Respondent's ADA request for a 2:30PM return time. Respondent shall serve an answer, in hand on Petitioner's counsel, and filed with the court, on or before December 20, 2019.

Dated: New York, New York
     November 21, 2019

_____
HON. HEELA D. CAPELL
J.H.C.



Civil Court
of the
City of New York

NOV 22 2019

ENTERED
NEW YORK COUNTY

Exhibit: B

6

The branch of the order to show cause seeking a transcript fee waiver is denied as it is not supported by facts showing that Respondent is entitled to a fee waiver.

The branch of Respondent's order to show cause seeking that this court take judicial notice of an undisclosed agreement between the parties permitting Respondent to interpose two simultaneous CPLR 3211 motions is denied as Respondent has not provided the court with a copy of any such agreement and Petitioner disputes that such an agreement exists.

The remaining arguments made by Respondent in reply will not be considered by the court as they were raised for the first time in the reply papers. (*All State Flooring Distribs., L.P. v MD Floors, LLC*, 131 AD3d 834 [1st Dept 2015]; *USAA Fed. Sav. Bank v Calvin*, 145 AD3d 704 [2d Dept 2016]).

Accordingly, the order to show cause is denied in its entirety. The Proceeding is adjourned for trial to January 15, 2020 at 2:30PM to accommodate Respondent's ADA request for a 2:30PM return time. Respondent shall serve an answer, in hand on Petitioner's counsel, and filed with the court, on or before December 20, 2019.

Dated: New York, New York
     November 21, 2019

                        HON. HEELA D. CAPELL
                        J.H.C.

Exhibit: B

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: HOUSING PART D
-------------------------------------------------------------x

Index No. L&T: **056244/2019**

SHERMIRAN CO., LLC
*a/k/a* SHERMIRAN COMPANY
*Petitioner,*

      -against-

RUDOLPH ROSENBERG ET AL,
      *Respondent,*
-------------------------------------------------------------x

AFFIDAVIT & BRIEF WITH MOTION
FOR CONTINUANCE: **ADA RIGHTS
MOTION, PRE-ANSWER CPLR
3211 DISMISSAL NOTICE**

I am requesting that this court continue the matter in mid-Junes for the following reasons:

1. On March 27, 2019, I filed a motion with this Court's clerk to set an initial appearance date to comport with my established ADA right to all hearings to be held at 2 pm or thereafter, Exhibit A.

2. Upon receipt of initial appearance notice that comports with my ADA rights, pursuant to 42 U.S.C. 12101 et seq. and Section 504 of the Rehabilitation Act of 197329 U.S.C.A. 794, for an afternoon hearing date, I intend to file CPLR 3211 et seq. pre-answer motion(s).

3. The Court is obligated to respect my ADA Accommodation status for all hearings in the afternoons whereas the hearing scheduled in the morning violates said established ADA right ORDERED BY THIS COURT.

4. The March 27th adjournment to May 15th was requested by the Landlord to the court clerk who then obtained the adjournment from this Court for the Landlord, but resolved for another morning hearing in violation of my ADA rights.

5. I have not made an appearance to date nor have I requested an adjournment.

6. My ADA right to exclusively afternoon hearings was established in October 2016 within this Court system.

Exhibit: C

7. As of this date, this Court has not ruled on my March 27th motion nor directed an initial hearing at 2 pm on any date thereafter.

8. I have not been served by Petitioner and any appearance by me will be for pre-answer motions absent waving personal jurisdiction challenge, therefore this Court lacks Personal Jurisdiction over my person which I intend to raise at the first proper initial court date that complies with my ADA rights.

9. I will be unavailable until June 10th forward as I will be out of State from this week on a critical personal matter.


Dated: January May 13, 2019

STATE OF NEW YORK, COUNTY OF _____NY_____, ss.

I, Rudolph Rosenberg, am a named Respondent in the within action. I have read the foregoing and know the contents thereof. The contents of the Affidavit are true to my own belief and knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

RUDOLPH ROSENBERG

Sworn to before me this 13th day of MAy, 2019

NOTARY

CHRISTOPHER E GREEN
Notary Public – State of New York
NO. 01GR6283242
Qualified in Bronx County
My Commission Expires Jun 3, 2021

Exhibit: C

# BUTNICK & LEVENSON LLP

**CIVIL COURT OF THE CITY OF NEW YORK**
COUNTY OF NEW YORK: HOUSING PART

------------------------------------------------------------X

SHEMIRAN CO. LLC
a/k/a SHEMIRAN COMPANY

Petitioner-Landlord,

- against -

RUDOLPH ROSENBERG
ELTHA JORDAN
418 East 88th Street
Apartment 2G
New York, New York 10128

Respondent-Tenant,

"JOHN DOE" and/or "JANE DOE",

Respondent(s)-Undertenant(s)

First and/or last name(s) of Undertenant(s) is/are fictitious
and unknown to Petitioner. The person intended is
whosoever has possessory right to, or actually is in
possession of, the premises herein described.

------------------------------------------------------------X

HOLDOVER
[RESIDENTIAL]

L&T INDEX NO. _____

**VERIFIED PETITION**

**THE PETITION OF SHEMIRAN CO. LLC a/k/a SHEMIRAN COMPANY** as the
Landlord/Owner of the Premises respectfully shows upon information and belief that:

1.  The undersigned are the attorneys of the Petitioner, SHEMIRAN CO. LLC a/k/a
    SHEMIRAN COMPANY, a limited liability corporation authorized to be business in New
    York State.

2.  Petitioner is the Landlord and Owner of the premises described and defined below.

3.  Respondent-Tenants RUDOLPH ROSENBERG and ELTHA JORDAN are the tenants of
    418 East 88th Street, Apartment 2G, New York, N.Y. 10128 (the "Premises") and entered
    into possession under a written rental agreement made between Respondent-Tenant and
    the Petitioner Landlord.

4.  Respondents "JOHN DOE" and "JANE DOE" are the undertenants of Respondent-Tenants.  "JOHN DOE" and "JANE DOE" are fictional persons unknown to Petitioner who may be residing in the premises.

5.  The Premises are described as follows: All rooms of Apartment 2G in the building known as and located at 418 East 88th Street, New York, N.Y. 10128, which is situated within the territorial jurisdiction of the Civil Court of the City of New York, County of New York.

6.  The term for which the Respondent-Tenant rented said premises expired on May 31, 2019.

7.  Respondents have not vacated the demised premises, nor surrendered possession thereof to Petitioner, and holdover, and continue in possession of said premises, after the expiration of the lease, without permission of the Petitioner. Petitioner has not accepted any use and occupancy after the expiration of the term.

8.  The premises is not subject to the rent stabilization law of 1974 as amended, in accordance with RSL 26-504.2 as amended, as the rent exceeded the deregulation threshold in effect at the time prior to Respondents' tenancy.

9.  The premises is in a building that is a multiple dwelling and pursuant to the Housing Maintenance Code §27-2097, et seq., there is a currently effective registration statement on file with the Office of Code Enforcement in which the owner has designated the managing agent named below, a natural person, over 21 years of age, to be in control of and responsible for the maintenance and operation of the dwelling:

**MULTIPLE DWELLING REGISTRATION NUMBER:**   105786
**REGISTERED MANAGING AGENT'S NAME &**
**BUSINESS ADDRESS:**

SALON REALTY CORP.
ANDRES SOTO
316 E. 89TH STREET
New York, N.Y. 10128

10. Petitioner lacks written information or notice of any address where the Respondent-Tenant resides, is employed, and/or has a place of business in New York State, other than the Premises.

11. Petitioner is entitled, pursuant to the Lease, to reasonable attorneys' fees in connection to this proceeding, in an amount to be determined at trial.

12. That prior to the commencement of this proceeding, Respondents failed to tender rent in the amount of $2,050.00 for each month as follows: December 2018, January 2019, February 2019, March 2019, April 2019, May 2019, June 2019, July 2019, August 2019 and September 2019. The total rent and/or use and occupancy owed to date is: $20,500.00.

13. That by reason of the foregoing, Petitioner demands a judgment of possession and a warrant of eviction to issue forthwith.

14. That by reason of the foregoing, Petitioner demands herein a judgment against the within Respondents for the fair market value of the Premises and for their use and occupancy of the same from September 1, 2019 until the date when possession of the Premises is returned to Petitioner at a monthly rate to be determined, but not less than $2,050.00 per month, at either trial or inquest of the within proceeding.

15. That by reason of the foregoing, Petitioner demands a judgment against the within Respondents for rent and/or "use and occupancy" owed prior to September 1, 2019.

16. That by reason of the foregoing, Petitioner demands herein a judgment against the within Respondents for the costs and expenses of this proceeding, including, but not limited to reasonable attorneys' fees, in an amount to be determined at either trial or inquest in the within proceeding.

**WHEREFORE**, Petitioner request a final judgment as follows:

[a]    awarding possession of the premises to Petitioner;

[b]    issuance of a warrant to remove Respondents from possession of the subject premises;

[c]    judgment for the fair market value of Respondents' use and occupancy of the premises to the date on which possession of the premises is returned to Petitioner in an amount not less than $2,050.00 per month;

[d]    judgment for any rent and/or "use and occupancy" owed prior to September 1, 2019 in the amount of $18,450.00;

[e]    judgment for reasonable attorneys' fees and ancillary expenses incurred by Petitioner in connection with this proceeding;

[f]    judgment for the costs and disbursements herein; and

[g]    for such other and further relief as this Court deems appropriate.

Dated:  New York, New York
        September 1, 2019

                              Yours, etc.

                              SHEMIRAN CO. LLC
                              a/k/a SHEMIRAN COMPANY
                              Petitioner

STATE OF NEW YORK, COUNTY OF NEW YORK. The undersigned affirms under penalty of perjury that he is one of the attorneys for the Petitioner, that he has read the foregoing petition and knows the contents thereof; that the same are true to his knowledge except as to matters stated to be upon information and belief; and to those matters he believes them to be true. The grounds of his belief as to matters not stated upon his knowledge are statements and/or records provided by the Petitioner, its agents and/or employees and contained in the file in the attorneys' office. This verification is made pursuant to the provisions of RPAPL 741.

Dated:   New York, New York
       September 1, 2019

_____
Noah E. Levenson, Esq.

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK : HOUSING PART
------------------------------------------------------------X
SHEMIRAN CO. LLC,                                    L&T INDEX NO.:

            Petitioner-Landlord,

     -against-

RUDOLPH ROSENBERG
ELTHA JORDAN
418 East 88th Street
Apartment 2G
New York, NY 10128

         Respondent-Tenant.



------------------------------------------------------------X



# VERIFIED PETITION
## (Holdover – Residential)

BUTNICK & LEVENSON LLP
120 Wall Street, 31st Floor
New York, NY 10005
(212) 362-1197